HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DANA LYNN SARGENT,<br><br>              Plaintiff,<br><br>   v.<br><br>THE STATE OF WASHINGTON,<br>LISA GILMAN, in her official and<br>personal capacity,<br><br>              Defendant. | CASE NO. 3:18-cv-05119<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR CONTINUANCE<br><br>DKT. #21 |

**INTRODUCTION**

THIS MATTER is before the Court on Defendants the State of Washington and Lisa Gilman's (collectively "the State") Motion for Summary Judgment. Dkt. #21. This case developed out of the prosecution of Dana Sargent for theft, fraud, and filing false tax returns. After the State dismissed charges against Sargent, she filed this lawsuit claiming malicious prosecution, false imprisonment, outrage, and violation of her Fourth Amendment rights pursuant to Section 1983 based on Gilman's investigation and Sargent's detainment at the King County Jail.

The State now seeks summary judgment. The State argues that Sargent has not produced evidence sufficient to show lack of probable cause or defeat the presumption of prosecutorial independence in filing criminal charges. The State further contends that Sargent cannot demonstrate that the State acted maliciously in filing charges. Finally, the State also argues that conducting a negligent investigation and filing charges that are later dismissed do not amount to outrageous conduct.

**BACKGROUND**

In 2013, the Department of Revenue concluded that several athletic clubs in Seattle (the Clubs) owned by former Seahawk Sam Adams had failed to pay excise taxes. The matter was referred to the Washington Attorney General's Office, and Assistant AG Scott Marlow began an investigation. He was assisted in his investigation by Lisa Gilman, a State investigator. The DOR's referral form named both Sam Adams and Dana Sargent as owners of the Clubs, and further stated that Adams and Sargent "made all financial decisions regarding the businesses [and] use the business bank accounts for personal expenses." Marlow Dec., Dkt. #24, Ex. 1.

The State's investigation of the Clubs lasted ten months, during which time the State interviewed 25 witnesses and reviewed thousands of pages of documents. The State's investigation led it to conclude that the Clubs had likely committed multiple violations, including failure to pay excise taxes, failure to pay employee wages, and failure to remit premiums withheld from employees' paychecks. The State also concluded that Sargent was personally involved in these acts as the Clubs' "Vice President of Financial Operation" and the person who filed many of the Clubs' tax returns and served other payroll and banking functions.

On February 4, 2015, the State filed criminal charges against Sargent and Adams, including multiple counts of theft based on the failure to make sales tax and other payments to the State, failure to pay wages, and filing false tax returns. The State supported its charging document with Gilman's Affidavit for Determination of Probable Cause. The Affidavit summarizes the State's conclusions based on its investigation and references numerous documents and witness interviews that the State conducted during its investigation. The statements in the Affidavit also form the basis of Sargent's claim that Gilman misled the prosecutors into filing charges against her.

After reviewing the State's motion and the supporting Affidavit, the King County Superior Court determined that probable cause existed to believe that Sargent committed the offenses charged and issued a summons directing Sargent to appear for arraignment. After her arraignment, Sargent was briefly confined to a cell in the King County Jail, where she was photographed and fingerprinted.

After the charges were filed, Sargent provided two proffers of evidence to the State. The State determined that the second of these proffers supported her contention that she lacked authority to engage in many of the acts that the State had attributed to her in the charges, although Sargent contends that she proffered the same information both times. Dkt. #27, at 9. The State dismissed the charges against Sargent in August 2016 and ultimately entered into a plea agreement with Adams.

## DISCUSSION

**1.      Section 1983**

"A plaintiff may bring an action under 42 U.S.C. § 1983 to redress violations of his 'rights, privileges, or immunities secured by the Constitution and [federal] laws' by a person or

entity, including a municipality, acting under the color of state law." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-95 (1978)). A 1983 claim for malicious prosecution requires showing that the defendants prosecuted the plaintiff with malice and without probable cause for the purpose of denying a specific constitutional right. *Id*. (citing *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir.1995)). Malicious prosecution actions may be brought against the prosecutor or "other persons who wrongfully caused the charges to be filed." *Id*. (citing *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126-27 (9th Cir.2002)).

a.  *Sufficiency of Pleadings*

In her Complaint, Sargent stated claims of malicious prosecution and false imprisonment, but also alleged that the defendants' conduct under the color of law abridged her Fourth Amendment rights in violation of 42 U.S.C. § 1983. In its Motion for Summary Judgment, the State assumed that Sargent's 1983 claim was based on the right to be free from illegal seizure. However, in her Opposition, Sargent stated that her 1983 claim is for malicious prosecution. The State responded that Sargent's 1983 claim should be dismissed because the Complaint did not allege malicious prosecution as the basis for the 1983 claim.

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The Ninth Circuit has explained that where "the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court." *Navajo Nation v. U.S. Forest Serv*., 535 F.3d 1058, 1079–80 (9th Cir. 2008). In *Navajo Nation*, the plaintiffs had not alleged their NEPA claim or the facts supporting it in the complaint, and consequently the court deemed the claim waived on appeal. *Id*. at 1080. *Coleman*

*v. Quaker Oats Co.* reached a similar conclusion where the plaintiff attempted to raise a disparate impact theory at summary judgment that was not pled in the complaint or raised during discovery. 232 F.3d 1271, 1292 (9th Cir. 2000). The court held that allowing the plaintiff to assert such a new theory would prejudice the defendant by forcing them to develop entirely new defenses that were not explored through discovery. *Id.*; *see also Smith v. City & Cty. of Honolulu*, 887 F.3d 944, 951–52 (9th Cir. 2018) (relying on *Coleman*).

Here, the dispute over the sufficiency of Sargent's pleadings may stem from confusion over the requirements for a 1983 malicious prosecution claim. Unlike a state malicious prosecution claim, a 1983 claim requires an additional showing that the defendant committed "a Fourth Amendment seizure (or the violation of another such 'explicit textual source of constitutional protection')." *Yousefian v. City of Glendale*, 779 F.3d 1010, 1015 (9th Cir. 2015) (citing *Albright v. Oliver*, 510 U.S. 266, 275 (1994)); *see also Abudiab v. Georgopoulos*, 586 F. App'x 685, 686 (9th Cir. 2013) (upholding district court's denial of summary judgment on Fourth Amendment malicious prosecution claim); *Chweya v. Baca*, 130 F. App'x 865, 868 (9th Cir. 2005) (holding that qualified immunity did not shield officer who allegedly initiated prosecution by fabricating evidence, thus violating the plaintiff's Fourth Amendment rights).

Consequently, while Sargent's Complaint is not as precise as it could be, she does allege the correct constitutional violation in relation to her 1983 claim. In addition, Sargent separately claimed malicious prosecution and alleged supporting facts. The State was therefore sufficiently put on notice of her 1983 malicious prosecution claim.

b. *Prosecutorial Independence*

The State argues that Sargent's 1983 malicious prosecution claim must fail because she cannot overcome the presumption of prosecutorial independence. "Typically, in constitutional

tort cases the '[f]iling of a criminal complaint immunizes investigating officers ... because it is presumed that the prosecutor filing the complaint exercised independent judgment in determining that probable cause for an accused's arrest exists at that time.'" *Caldwell v. City & Cty. of San Francisco*, 889 F.3d 1105, 1115 (9th Cir. 2018) (quoting *Smiddy v. Varney* (*Smiddy I*), 665 F.2d 261, 266 (9th Cir. 1981)). Courts have applied this presumption of prosecutorial independence in malicious prosecution cases. *See, e.g., Newman v. Cty. of Orange*, 457 F.3d 991, 994 (9th Cir. 2006). To rebut the presumption, a plaintiff must produce evidence "that the district attorney was subjected to unreasonable pressure by the police officers, or that the officers knowingly withheld relevant information with the intent to harm [him], or that the officers knowingly supplied false information." *Id.* (quoting *Smiddy v. Varney* (*Smiddy II*), 803 F.2d 1469, 1471 (9th Cir.1986)).

Where the prosecutor relied solely on the arresting officer's report, material omissions or false information in that report may be sufficient to defeat the presumption. *See, e.g., Borunda v. Richmond*, 885 F.2d 1384, 1390 (9th Cir. 1988) (officers provided conflicting accounts of the incident); *Barlow v. Ground*, 943 F.2d 1132, 1137 (9th Cir. 1991) (plaintiff's version of events was corroborated by independent witness). However, the plaintiff's own account of the events leading up to arrest alone is insufficient. *See Sloman v. Tadlock*, 21 F.3d 1462, 1474 (9th Cir. 1994); *see also Newman*, 457 F.3d at 995 (applying *Sloman*'s rule to a malicious prosecution claim).

Unlike *Borunda*, *Barlow*, and *Sloman*, which involved incidents recorded in police reports, the charges in this case were filed after a lengthy collaborative investigation. In cases involving sustained investigations, courts have held the presumption rebutted where the prosecutors "relied on the information provided by" the investigators, who withheld documents

and pressured the prosecutors to file charges. *See Harper v. City of Los Angeles*, 533 F.3d 1010, 1027-28 (9th Cir. 2008). A merely negligent investigation is not enough to rebut the presumption of prosecutorial independence because "[p]art of a prosecutor's independent function is to weed out inaccuracies in police reports based on negligent investigations." *Simmons, III v. Cty. of Los Angeles*, No. CV 04-9731 SVW JC, 2009 WL 6769335, at *6, n.14 (C.D. Cal. Sept. 1, 2009) (report and recommendation adopted and affirmed) (citing *Smiddy II*, 803 F.2d at 1472); *Smith v. Short*, No. CIV. 07-515-KI, 2008 WL 5043917, at *3 (D. Or. Nov. 21, 2008).

The undisputed facts of this case are distinguishable from *Harper* and preclude a finding that the prosecutor did not act independently in filing charges. During the ten-month investigation of the Clubs, the State interviewed 25 witnesses and reviewed thousands of pages of documents. Gilman Dec., Dkt. #24, at 3. Although Gilman was assigned to investigate the Clubs' nonpayment of excise taxes, she worked closely with the prosecutors who ultimately filed charges against Sargent. *See id.* at 3 ("I worked closely with the Assistant Attorney Generals Scott Marlow and Tienney Milnor."); Marlow Dec., Dkt. #23, at 3 ("I was directly involved throughout the investigation and familiar with all the facts that the State developed during the investigation."). Both Gilman and Marlow state that they are unaware of any information that was withheld from prosecutors before charges were filed. Dkt. #24, at 3; Dkt. #23, at 3. In addition, while Gilman may have drafted the Affidavit supporting criminal charges, Marlow reviewed it and agreed with its accuracy. Dkt. # 23, at 4. The Affidavit therefore functioned more as a jointly-constructed summary of the State's reasons for charging Sargent, not as the document prosecutors relied on in deciding whether to charge her, as Sargent claims.

1    Insofar as Sargent argues that Gilman's Affidavit was inaccurate, she bases most of her
2    assertions on inconsistencies between the Affidavit and its supporting documents from the
3    State's own investigation. *Compare* Opp'n, Dkt. #26, at 3 ("Not one of the 80 documents
4    submitted to the Court by Ms. Gilman refers to Ms. Sargent as an owner or operator.") *with*
5    Gilman Dec., Dkt. # 24, at 5, 7, 9 (describing the documents attached to Gilman's declaration as
6    "[i]nformation the State and I relied on" when drafting the Affidavit); *see also* Dkt. #26, at 2-6.
7    Needless to say, a prosecutor cannot be misled by an affidavit when they have had access to the
8    documents it is based on for months. *See Smiddy II*, 803 F.2d at 1472); *Short*, 2008 WL
9    5043917, at *3.

10   There are a few instances in which Sargent's claims of inaccuracy rely on evidence not
11   attached to Gilman's declaration. For example, with respect to Gilman's statement that Sargent
12   acted as chief financial officer for the company, Sargent points to an email from Jeremy Adams
13   in which he states that he is one of her "two bosses." Dkt. #26, at 5. However, not only was this
14   email likely unavailable to Gilman (and hence impossible to conceal from the prosecutor), but
15   Sargent herself argues that several other pieces of evidence from the State's investigation
16   independently indicate that she had no authority to act. *See id.* at 4. Other instances where
17   Sargent relies on her own declaration to show the inaccuracies in Gilman's Affidavit suffer from
18   similar issues. *See id.* at 5-6. Significantly, Sargent never claims in a non-conclusory fashion that
19   Gilman had access to documents or evidence that she did not share with prosecutors.

20   To contest the Affidavit's statement that the Clubs did not file combined excise tax
21   returns before May 2013, Sargent points to the expert report of a forensic accounting firm hired
22   by Adams during his criminal prosecution. *Id*. at 7-8. However, Gilman's description was a fairly
23   straightforward interpretation of information in the DOR's referral, which was obviously also
24

available to prosecutors. *See* Reply, Dkt. #31, at 6. If Gilman's statement was inaccurate, Sargent has provided no reason to conclude that it could amount to anything more than negligence. In contrast to conflicting witness testimony or inconsistent officer accounts, an expert report procured after charging is unlikely to produce an inference of misrepresentation or bad faith by investigators. *See Smith v. Short*, No. CIV. 07-515-KI, 2008 WL 5043917, at *3 (D. Or. Nov. 21, 2008) (finding the presumption not rebutted where evidence that came to light subsequent to indictment cast doubt on the defendant's guilt).

In short, Sargent has produced no evidence that was available to Gilman but that was not shared with prosecutors. Furthermore, Sargent has not produced evidence that the Affidavit, which is the sole source of Gilman's alleged misrepresentations, was even relied upon by prosecutors when deciding whether to charge Sargent. Under these circumstances, no reasonable jury could find that Gilman or any other investigator "procured the filing of the criminal complaint by making misrepresentations to the prosecuting attorney." *Newman*, 457 F.3d at 994 (citing *Borunda*, 885 F.2d at 1390). Sargent's 1983 malicious prosecution claim is therefore dismissed.

**2.    State Law Malicious Prosecution**

"In order to maintain an action for malicious prosecution in this state, a plaintiff must plead and prove the following elements: (1) that the prosecution claimed to have been malicious was instituted or continued by the defendant; (2) that there was want of probable cause for the institution or continuation of the prosecution; (3) that the proceedings were instituted or continued through malice; (4) that the proceedings terminated on the merits in favor of the plaintiff, or were abandoned; and (5) that the plaintiff suffered injury or damage as a result of the prosecution." *Hanson v. City of Snohomish*, 121 Wash. 2d 552, 558 (1993). "Although all

elements must be proved, malice and want of probable cause constitute the gist of a malicious prosecution action." *Id.*

"A prima facie case of want of probable cause is established by proof that the proceedings were dismissed in favor of the plaintiff, but that prima facie proof may be rebutted by the defendant's evidence." *Youker v. Douglas Cty.*, 162 Wash. App. 448, 461 (2011). Evidence of independent findings of probable cause by a court, standing alone, are not enough to defeat a malicious prosecution claim. *Id*. However, "probable cause is deemed established as a matter of law with respect to a given defendant if it clearly appears that the defendant provided the prosecuting attorney with a full and fair disclosure, in good faith, of all the material facts known to him or her, and the prosecutor thereupon preferred a criminal charge and caused arrest." *Id*. (citing *Bender v. City of Seattle*, 99 Wash. 2d 582, 593 (1983)). Any issue of fact regarding this full and truthful communication to the prosecutor means the issue must go to a jury. *Bender*, 99 Wash. 2d at 594.

Malice is "not a necessary deduction" from the absence of probable cause, and requires proving that the prosecution was undertaken for improper motives or in reckless disregard of the plaintiff's rights. *Id*. Improper motives may take the form of prosecuting the plaintiff without believing they are guilty, primarily out of hostility, or to obtain a private advantage over the plaintiff. *Id*. The plaintiff must "demonstrate affirmative acts disclosing at least some feeling of bitterness, animosity or vindictiveness towards the appellant." *Youker*, 162 Wash. App. at 464. Recklessness requires proof of bad faith, which "may be shown by establishing that the defendant actually entertained serious doubts." *Id*.

Here, the State dismissed charges against Sargent, establishing a prima facie case of want of probable cause. *See* Marlow Dec., Dkt. #23, at 5-6. The fact that the King County Superior

Court made a finding of probable cause after reviewing the Affidavit is helpful for the State, but not dispositive. *See* Dkt. #24, Ex. 4, at 3. However, the State has also submitted evidence that the Affidavit was supported entirely by documents available to prosecutors, that Marlow personally reviewed and agreed with Gilman's statements in the Affidavit, and that neither Gilman nor Marlow are aware of any information from the investigation that was withheld from prosecutors. Dkt. #24, at 3; Dkt. #23, at 3. Sargent has presented no evidence directly contradicting these statements by showing that Gilman possessed information that she did not turn over to prosecutors or fabricated the content of documents.

Instead, Sargent asks the Court to find that an issue of fact exists because Gilman's Affidavit contains errors regarding Sargent's ownership of and role at the Clubs. This argument fails for two main reasons. First, as previously discussed, the Affidavit was drafted collaboratively and based on documents that prosecutors possessed. This indicates that any deviations between the Affidavit and its supporting documents were not the result of bad faith because Gilman did not withhold the documents that conflicted with her Affidavit.

Second, to the extent the Affidavit does contain inaccuracies, these were reasonable interpretations of the evidence available to Gilman and the State. For example, Sargent disputes Gilman's statement that Sargent "acted as the chief financial officer for the companies." Dkt. #26, at 4. However, this statement finds substantial support in the documents that Gilman relied on. Sargent identified herself as the "Vice President of Finance," a position that the Clubs describe as having significant payroll and banking responsibilities. Dkt. # 24, Exs. 52-54. Witnesses stated that Sargent wrote all the checks and was knowledgeable about the companies' books, and even described her as the CFO. *Id*. at Exs. 48, 49. Sargent also filed many of the Clubs' required quarterly tax returns and wage reports and combined excise tax returns. *Id*. at

Exs. 9-14, 25-44. Furthermore, Sargent made herself unavailable to Gilman to correct any errors through an interview. Dkt. #24, at 4; s*ee Beahm v. City of Bremerton*, No. C09-5048 RJB, 2010 WL 1141476, at *15 (W.D. Wash. Mar. 22, 2010) (finding a full and fair disclosure where the detective relied in good faith on a witness interview and the plaintiff refused to be interviewed). Given the support for Gilman's statements in the Affidavit, its inaccuracies are insufficient to infer bad faith.

Sargent has produced no evidence indicating that Gilman did not make a full, good faith disclosure of information to prosecutors. A reasonable jury could therefore not conclude that Sargent's prosecution was instituted without probable cause or that Gilman displayed malice toward Sargent. Sargent's state law malicious prosecution claim is dismissed.

**3.    False Imprisonment**

The State argues that Sargent's false imprisonment claim must be dismissed because the statute of limitations has run. Sargent offers no arguments regarding her false imprisonment claim in her Opposition.

Under Washington law, false imprisonment claims have a two-year statute of limitations that accrues when the plaintiff was unlawfully detained. RCW 4.16.100; *Heckart v. City of Yakima*, 42 Wash. App. 38, 39 (1985). Sargent was arraigned and subsequently processed at the King County Jail on March 12, 2015. Sargent filed her Complaint in this case on January 31, 2018, more than two years after she was detained. Sargent's false imprisonment claim must therefore be dismissed.

**4.    Outrage**

In Washington State, the tort of outrage requires "(1) extreme and outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3) actual result to the plaintiff of

severe emotional distress." *Rice v. Janovich*, 109 Wash. 2d 48, 61 (1987). "Conduct is considered 'extreme and outrageous' 'only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Merrill v. Golik*, No. C12-5674 KLS, 2013 WL 5176844, at *9 (W.D. Wash. Sept. 13, 2013) (quoting *Grimsby v. Samson*, 85 Wash.2d 52, 59 (1975). Although the question of outrageousness is typically for the jury, the court should determine whether reasonable minds could differ as to whether certain conduct could meet the standard. *Id*. (quoting *Diacomes v. State*, 113 Wash.2d 612, 630 (1989)).

Here, Sargent has presented no evidence or arguments that the State's conduct was outrageous except for the fact that the State prosecuted Gilman and later dismissed the charges. However, this does not amount to conduct "beyond all possible bounds of decency." Sargent does not identify any glaring missteps in the State's investigation of the case that could rise to the level of outrageousness, and a merely negligent investigation is insufficient. *See Merrill*, 2013 WL 5176844, at *9 (finding that the plaintiff failed to meet his burden for an outrage claim where he asserted that the detective's investigation should not have relied solely on statements from two children). Consequently, Sargent's claim of outrage is dismissed.

**5.     Rule 56(d) Motion for Continuance**

In her Opposition, Sargent moves for additional time to conduct discovery under Rule 56(d). Sargent is unclear about exactly what type of relief she wants, but she argues that she has not had a realistic chance to pursue her theory of the case. The State argues that the Court should deny Sargent's motion because the State's Motion for Summary Judgment raised no new or unanticipated issues and Sargent conducted no discovery during the nine months before it was filed.

Under Federal Rule of Civil Procedure 56(d), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." The Rule "provides a device for litigants to avoid summary judgment when they have not had sufficient time to develop affirmative evidence." *Burlington N. Santa Fe R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 773 (9th Cir. 2003) (allowing a continuance where the defendant moved for "lightning-quick summary judgment" less than one month after the action commenced).

Denial of a Rule 56(d) motion is "generally disfavored where the party opposing summary judgment makes (a) a timely application which (b) specifically identifies (c) relevant information, (d) where there is some basis for believing that the information sought actually exists." *Id*. at 774-74 (quoting *VISA Int'l Serv. Ass'n v. Bankcard Holders of Am.*, 784 F.2d 1472, 1475 (9th Cir.1986)). However, "[t]he district court does not abuse its discretion by denying further discovery if the movant has failed diligently to pursue discovery in the past . . . or if the movant fails to show how the information sought would preclude summary judgment." *California Union Ins. Co. v. Am. Diversified Sav. Bank*, 914 F.2d 1271, 1278 (9th Cir. 1990).

Here, there are multiple grounds for denying Sargent's 56(d) motion. First, unlike *Burlington*, Sargent had nine months to pursue discovery before the State filed its Motion. *See* 323 F.3d at 773. Instead of using that time wisely to pursue her case, Sargent squandered it by failing even to propound paper discovery. Dkt. # 26, at 22. This is not a situation where the defendant forced the plaintiff into a premature summary judgment faceoff.

Second, even at this late stage of the litigation, Sargent fails to identify any specific information she wants to elicit through discovery or suggest any reasons to believe the information she seeks exists. Sargent states that she wishes to depose Marlow, Gilman, AAG Tienney Milnor, and DOR agent Carlos Ferriera. However, instead of describing discrete pieces of evidence she wishes to uncover, Sargent merely repeats her bare allegations. For example, Sargent hopes to depose Gilman in order to "establish that she based the allegations in her Affidavit . . . on false statements; that she relied on what she knew to be false testimony of witnesses that formed the basis of allegations against Ms. Sargent; [and] that she fostered malice toward and a reckless disregard of Ms. Sargent's rights." Dkt. #26, at 23. Such conclusory statements are insufficient to support a motion for Rule 56(d) continuance.

Finally, because of the nature of Sargent's arguments, it is difficult to imagine how additional depositions would vindicate her claims. *See California Union Ins. Co.*, 914 F.2d at 1278. For example, Sargent largely bases her contention that Gilman made false statement in the Affidavit on the contradictions between that document and the numerous other documents that supported it. However, if the Affidavit's inaccuracy is supposedly proved by documents that the prosecutors also had access to, Sargent's entire case for malicious prosecution seems based on a flawed premise. In order to overcome the presumption of prosecutorial independence, Sargent would likely have to show that Gilman possessed information that contradicted her witness interviews and other documents but that was not shared with prosecutors. However, Sargent presents no basis for believing such evidence exists. Consequently, her Rule 56(d) motion is denied.

## CONCLUSION

For the foregoing reasons, the State's Motion for Summary Judgment [Dkt. #21] is GRANTED and Sargent's Motion for Rule 56(d) Continuance is DENIED.

IT IS SO ORDERED.

Dated this 9th day of January, 2019.

Ronald B. Leighton
United States District Judge